Case 21-6088, Joe Hand Promotions Inc v. James Griffith Jr, et al. Oral argument, 15 minutes per side. Ms. King for the appellant. Good afternoon. Ms. King, you may proceed. Good afternoon. Jamie King for the appellant, Joe Hand Promotions. Thank you for the court's time and consideration of the issues today. May it please the court. This is an appeal granting summary judgment for the appellees finding that Joe Hand lacked standing to sue for copyright infringement. The Tennessee District Court's order states, the agreement assigned Joe Hand an exclusive right under the Copyright Act and with it, the accompanying enforcement rights. Then the district court erred by finding that the agreement was a bare right to sue and failing to enforce the agreement between Joe Hand and Showtime, the copyright author. This court posed three questions and I'd like to answer them right now. The answer to the first one is no. The answer to the second one is yes. And the answer to the third one is not at all. This case involves the unauthorized broadcast of a live sporting event, the Mayweather versus McGregor boxing match on August 26, 2017 in Appellee's Commercial Bar. A live sporting event's not like a movie, where a movie can be created in advance, fixed to a medium, copyrighted before its premiere, and reads its most value on the night of the premiere after the copyright and after it's being fixed. A live sporting event, the premiere and the fixation is happening simultaneously. The most value for the customers is the anticipation of what's going to go on and who's going to win. After that, the value depreciates. Showtime applied for the copyright after the live broadcast, as has to be the case. Once a copyright registration number was received, Johan and Showtime papered the assignment in November of 2017. The assignment retroactively assigned exclusive rights to Johan under 17 U.S.C. 1606, excuse me, 106.3 and 4 for public performance of the live August 26, 2017 broadcast. Counsel, what's your best case support for the right to do that retroactively? Okay, the actual statute allows it, and then there are two cases that address it. So, the copyright statute under 201 D1 allows transfer by any means of conveyance. D2 says any subdivision. 101 says the transfer of ownership by any conveyance and any alienation. Now, there's a case, ABKCO, and it is a second circuit case in 1991. It is in the Johan's brief on pages 20 and 23, and that case is a second circuit case. It says that if the entity is transferred both the copyright and the accrued claims, it has standing to sue for infringements occurring before it held the copyright. And then later, the Ninth Circuit blessed the second circuit's opinion in Silvers v. Sony Pictures Entertainment. That's at 402 F3D 881 at 890 Ninth Circuit. The Silvers case, talking about the ABKCO case, said the second circuit made clear that its decision was limited to the situation in which the same entity purchased both the copyright and the accrued claims. And the- Counsel, if you, pardon me for interrupting. Sure. I have to confess I was kind of puzzled by your brief. Okay. Which is really not what you're arguing right now. Okay. The first part of the brief talks about Tennessee law. Yes. That is, I guess, you know, the first 20 pages of the brief, and I thought you kind of won before the district court on the Tennessee law. Okay. Is that wrong? Am I reading this wrong? And now you're arguing the part that I thought your brief would argue, but all of these cases you're citing here are just not discussed in your brief. So I'm just puzzled by that. I think there's probably some force to the arguments, but I'm concerned that maybe you forfeited them by not raising them in your brief. We did not. They are actually an integral part and subsumed into the brief. Well, I don't follow that. I guess the district court was very clear up until page eight that he was ruling he was going your way up until page eight. And then he says, however, if you look at the Copyright Act, well, we come to a different conclusion. Yes, I- That's how he structured it, right? So when you argue it all together, then I get confused, I guess. Help me out. Yes, your honor. In the appellate brief cited on page 25 is the Johan versus Barber case. It's a district court case. It's been published. This is your brief? Yes, your honor. The plaintiff's brief at page 25. Because my page 25 just has- I'm using the page numbers at the top. Oh, well, I just have to- can you use the ones at the bottom? Where are you in here? Be page 19 at the bottom. Oh, page 19. Yes. Now, that's a lengthy, lengthy site from the- This is a district court case that considered this same exact agreement. Applied the language from the copyright law to it and found by its plain language, this is an explicit retroactive transfer of Showtime's 1064 rights. It only transfers rights in the already aired live telecast and does not grant Johan any prospective rights in subsequent broadcasts. That case is actually applying the language from the Copyright Act, and it is a published case. Now, with regard to the coupling of the accrued actions and the assignment of the exclusive right, that is addressed in the district court case Johan Promotions v. DeLone. That is in- that is on page 20 of Johan's brief. And that case says, because the agreement grants plaintiff an exclusive license in distribution and public performance rights, in addition to the right to sue, it is sufficient to confer legal ownership for the purposes of Section 501B. You're saying that your argument implicitly discusses these two other cases from other circuits, Wiley and Silvers? Now, Silvers is not discussed in the brief. ABKCO is on page 20. Let me just try to get what your position is with respect to those cases now. Yes. The district court relied on them. Do they correctly state the copyright law? Yes, your honor. So a- my understanding then is that a bare right to to sell a cause of action or the sale of a- the assignment of a bare right of action, or whatever the jargon is, is not permitted under the Copyright Act. Is that right? That is true, but that's not what this is. Not at all. So that's your argument, basically, is that this is not what this is. No, not at all. In fact, Johan- Where do you argue that? That's on 23? Yes, it is argued. It is argued in- It should certainly seem to the district court that that's exactly what you have, because there's nothing else in addition. Actually, in front of the district court, it was lots of evidence showing that Showtime and Johan actually performed the terms of the agreement on August 26, 2017, and that the copyright law allows it to be retroactive. Showtime didn't sell commercial rights to its customers. Showtime on its website wrote, and I quote, you are only permitted to access and view the content for personal non-commercial purposes. There was an on-screen warning prior to the broadcast, notifying customers of the exclusive licenses and warning commercial establishments that it was unlawful to attempt to license the program under a residential subscription. Didn't you say at the outset of your argument that this is a different kind of a copyright, in a sense, because it's all about live. It's all about its being live. Yes, it's live. You're not worried about a film of this in the future. Right. You're just talking about the live presentation, and the live presentation had not been transferred at the time of the contract that's at issue in this case. Is that right? So, yeah. Is that right? Yes. It had not been transferred, and it couldn't be transferred after that, because if you think of the right in the sense that you're talking about it, it just can't happen anymore. There was only a value before it was transferred. That's what the district court, and it's kind of intuitive. Actually, that's not the case at all. For a live broadcast, it has to be copyrighted after the live event. The copyright is retroactive to cover that broadcast, just like the assignment is, and this gives the chance the parties to specifically identify the copyright and identify exactly the rights under the copyright that are being exclusively transferred. So, in the future, you anticipate entering into these contracts after the live event? We don't think that there's anything unlawful about it, and in fact, I believe the Copyright Act allows it. I understand, but it seemed to the district judge to be anomalous, because there's nothing to it anymore, because it can't be live. It's already happened. Well, if you give retroactive effect to it, and this district court's opinion would be contrary to ABKCO. It would be contrary to the blessing given by the Ninth Circuit in the Silvers case, and it would be contrary to the purpose given by the United States Supreme Court of the Copyright Act. Let me ask you, what about the problem that your opposing counsel argues that the other contract, which is necessary to grant that exclusive right, was not part of the record? Is that called the Mayfield contract, Mayfield assignment? What's the name? Because we're talking about two different documents, correct? So, there is the retroactive assignment between Johan and Showtime. There is also a commercial licensing agreement with the promoters. That actually is part of the record. So, Showtime- Before you go on and explain camp, isn't that necessary to your argument? Because it makes it not just a bare assignment, but it actually gives exclusive rights in the Mayfield agreement, correct? So, absolutely. It shows that all the parties involved, Showtime, the promoters, and Johan, all intended and knew that on the night of the fight, Johan would have the exclusive rights for commercial premises in the United States on the night of the event. And actually, in the record, there is a distributorship agreement. It was part of the subpoena. Apelli subpoenaed Showtime, and it produced a distributorship agreement between Showtime and Mayweather. And then from that, the commercial licensing agreement with Johan, and then the retroactive assignment after the copyright was issued by Showtime. I'm not clear on your answer to Judge Rogers' question that, is this the way that business is always done? Do you have to have the copyright number that you receive after the transmission of the fight in order to make that application? You do not have to have the copyright registration number, but here, since Johan's rights are so narrow, it is the live event, commercial establishments. In this case, it was done afterwards. And we believe the Copyright Act allows either before or after. And it makes sense when it's a live sporting event, only because it gets copyrighted afterwards. And here, Showtime didn't keep any of the rights assigned to Johan. There's no, Johan doesn't have to report to Showtime. Johan doesn't have to give the rights back. This is a complete transfer of the exclusive rights and the accrued causes of action. And there's no evidence in the record whatsoever that Showtime ever sued a commercial establishment for piracy of this particular fight, including the evidence of their warnings and the website and all that. This is far more than a bare right to sue. This is the exclusive right. And this is the copyright law that you're applying now, right? Yeah, the copyright and the language of the agreement. We'll at least agree that 80% of your brief is dealing with another issue. It's dealing, it is dealing with copyright. It is dealing with the Tennessee Tennessee law, which you seem to win below. Okay. Let me ask one thing, Your Honor. You have, this is pretty well a follow up on what you've already been asked here, I guess. The commercial licensing agreement between Mayweather, which I understand to be acting on behalf of Showtime, and Johann was August 1, which was before the performance. And then there's the subsequent copyright agreement of November 20, 2017. After the performance, is it your argument that the two agreements, the commercial licensing agreement and the copyright agreement should be should be read and understood together to constitute your argument? Or is that necessary? Yes. These contracts together demonstrate that all the parties involved, the promoters, Showtime, and Johann all understood that Johann has these exclusive rights in this copyright. These promoters blessed it prior to the fight. Once the copyright registration was issued, Johann and Showtime's copyright assignment was papered. And the parties, promoters, Showtime, and all acted under it. We ask the question, Miss King. Yes, Your Honor. I read your reply brief to say that you do not rely on the Mayweather document. It's not necessary to rely on it to. But I'm saying whether it's necessary or not, it says that you don't rely on it at page five of your reply brief. Is that accurate? For what purpose are we talking about? It seems to say for any purpose. But it doesn't. But apparently you're saying it isn't. To me, that means it's not necessary to your argument. It's not necessary to find the district court's error in this case. We believe that this district court's opinion is not overturned, that the opinion goes squarely against the opinions in the Second Circuit, the Fifth Circuit, and the blessing in Silvers v. Sony of ABKCO in the Ninth Circuit. Those cases all, in the end, go in the opposite direction that you want to go. You're distinguishing those cases, basically. No, ABKCO says, if me. I guess I'm referring to the two cases that the district court relied on. Wiley and Silvers. Okay. Those are cases that say you can't assign this particular animal. Yes, if it was a bear. And you're saying, well, if we read those carefully, they're distinguishable or what? Yes. So the Silvers case ultimately found that there's no bear right to sue. But in the Silvers case, when it addressed ABKCO, which is more similar to this case, where it is the exclusive right and the accrued causes of action, Silvers blesses the Second Circuit. And in the footnote, it says, this makes perfect sense. It is consistent with the act and the constitutional purpose. It's in the footnote of Silvers when it's talking about the ABKCO, which that case finds that. I guess it would be nice if you decided it. But you say it's not necessary. Can we put it aside and see what your argument is? The argument, the district court is erroneous in this case, whether or not the commercial licensing agreement is considered. And I think that that is the purpose that's in it. Because the assignment of the copyright is retroactive. And on its face includes the accrued causes of action. The commercial license agreement is the promoter's also blessing and all parties involved saying, yes, Johan, you have the exclusive rights. And then the parties, if you put the terms of the contract in context. But they didn't have it at the relevant point in time. Well, that's the difficulty I'm having. I think we're way beyond the time. I'm sorry. We're not getting a very good guidance from the clock here. But if there's further questions from the panel, we can certainly still take those before we end the plaintiff's argument here. Yes, thank you so much. Maybe we can take anything up on. Ms. King, did you? Oh, you reserved five minutes for rebuttal. Yes, your honor. Okay. All right. You still have your rebuttal time. Why don't we hear from Mr. Bathke? Your honor, may it please the court. I represent the defendant, the athlete in this case, James Griffith Jr. and Lisa Leslie. I think I want to just start off real quickly on a point that Judge Rogers made at the very beginning. It is the law of the Sixth Circuit that any issue not raised in the initial brief of the appellant is waived. I think that's important because the brief here, appellant's brief, Johann's brief, really discusses thoroughly Tennessee law, the use of extrinsic evidence, and really skirts around, if really not even directly. Oh, just to be clear, what argument are you identifying that you're claiming is waived? Your honor, under, well, first of all, they have cited both the Wiley case and the Silvers case concerning the interpretation of 501B and the bare right to sue. That really is not true. You don't necessarily waive an entire argument because you don't cite a particular case, do you? No, your honor. But here, they focus their arguments on the intent of the parties in the contractual arrangement and not in the interpretation of the copyright law, the 1976 Copyright Act. Well, we'd be concerned with both the contractual understanding and the copyright law, wouldn't we? To understand the argument. Yes, your honor. It is important to both understand the intent of the parties, but by merely arguing that the intent of the parties to do this without abiding by the Copyright Act in the first place, then you're still left with an agreement that is not, that is, as according to the district court, is meaningless, metaphysically impossible, a bare right to sue. Are you saying the parties' agreement was outside of or not governed by the copyright statute? And if that's what you're saying, what part of their contractual agreement is outside the statute or not governed by the statute? I mean, you're making these broad statements, but it would be more understandable if you relate that to the contractual provisions that you're concerned about. Yes, your honor. So, and I will focus on the court's questions because I think they properly discuss the issues that the court has in this case. First of all, question number one, the court had asked whether 201D prohibits the assignments, prohibits the assignment of the exclusive right to display a copyrighted live event after the event has occurred. Here, the assignment agreement specifically states what the commercial rights at issue in this case are the exclusive right to distribute and publicly perform the event live on August 26th, 2017, the commercial premises. As the district court properly pointed out, the exclusive right to perform the event live in the past is utterly meaningless once the event has occurred. But doesn't that ignore the fact that Johann had already been granted the right to show an exclusive right to show? And isn't that the issue, the exclusivity of the right supporting the bare assignment of a right to sue that takes it outside being just a bare assignment and gives it the qualifications to move forward in the litigation, right? Your honor, there is no, so Showtime is both the registered owner of the copyright in the broadcast of the live event, and it is also the owner under, it brought a lawsuit under 411C of the Copyright Act, which it allows it to do before the specific work, the simulcast is fixed in a tangible medium. There is no agreement between Showtime and Johann either before, well, yeah, before the event occurred. There is this agreement that has been, Johann is attempting to introduce now for the first time to show that there's Mayweather and there's other parties that are agreeing as to commercial rights. Showtime is not a party to that agreement. Showtime is- Are you talking about the commercial licensing agreement dated August 1? Is that what you're referring to? The commercial agreement that is between the third parties, not Showtime, and I think it's Mayweather, they call it the Mayweather agreement, which was discussed in Appellant's brief. It is a party- The agreement I'm referring to was assigned in its entirety from Showtime to Mayweather. So Mayweather Promotions then acquired all of the rights and ownership that previously was vested for purposes of this transaction that was previously vested in Showtime. So it doesn't matter that for our analysis, Showtime itself was not a party to this commercial licensing agreement. If that's the one you're referring to, that's why I was asking you, is that the agreement you're talking about? I'm sorry, Your Honor. I guess I'm confused at the agreement that is being discussed here. There's an agreement between Showtime and Johann that was executed three months after the event occurred. That is the agreement that concerns the copyright. That's a different agreement. That's the copyright agreement. Yes, Your Honor. That was dated November 20th, 2017. Yes, Your Honor. Is that the one you're talking about, but you're not referring to the prior agreement wherein Showtime gave its rights to Mayweather on August 1, 2017, which was prior to the live performance? You're not talking about that when you're talking about the copyright agreement of November 20th, 2017. Is that what you're discussing, just to follow you? Well, from this entire case, Your Honor, the agreement that has been relied upon by Johann to convey the copyright in this simulcast has been the agreement of November of 2017. That for the entire time, that's the agreement that's been an issue. That was one that was mentioned below at the district court. That's what the district court looked at in order to determine the issues in this case. At no time was this other agreement made an issue in the specific arguments that were here today. I didn't- Mr. Bathey, could I interrupt you? Judge Clay is asking a simple question. He's saying, are you talking about the Mayweather agreement right now in the middle of the sentence you're uttering? You are, aren't you? Your Honor, I'm talking about the Showtime and Johann agreement. When was that? That was November 30th, 2017. November 21, November of 2017, right? After the- As I understand it, there's a document that was the whole show in the district court. The only thing the district court talked about that was entered into after the event occurred. But then the parties, at least on this appeal, have referred to a so-called Mayweather agreement that preceded, okay? So can we say the preceding document and the after document or something? Because you seem to be talking, when we ask, are you talking about the first one? You start talking about the second one and vice versa. And we're confused. Yes, Your Honor. And I will make it very clear. In the joint appendix that below in the court, there was a joint appendix that was, there was an agreement, 00031. It's entitled Commercial Licensing Agreement. That's between Amman Mayweather Promotions LLC and Johann Promotions. Well, Judge Clay has figured out that that very document also says something about Showtime. It says that Showtime gave, assigned it to Mayweather. Is that what you were saying, Judge Clay? I mean, I think that's what he was saying. Yeah, Showtime conveyed his rights to Mayweather. There is an argument that the subsequent copyright agreement merely reiterated or clarified the rights that were conveyed in the prior agreement of August 1. I don't think Mr. Bathke would agree with that, but that's certainly one way to read these two agreements together. We're trying to understand and enforce the parties intended contractual agreement. If, in fact, that's what they agreed to. So the copyright agreement was executed after the fact, but purported to convey the commercial rights airing the live fight on August 26. Of course, the district court found the entire agreement unenforceable because of this thing about the dates. But if Showtime gave the plaintiff legally enforceable rights to enforce any violation of the copyright on the day of the fight, then there'd be a stronger argument that the plaintiff should prevail here. Based on Tennessee, I guess, Tennessee contractual law, which to the extent it doesn't conflict with copyright law and the copyright statute. So the issue may be when was the copyright ownership interest conveyed? Were the interests conveyed initially on August 1 or were they never conveyed until November of 2017? And if they weren't conveyed at that time, was the November agreement retroactive? So I guess there are a couple of questions there. When were, if there were ownership rights conveyed, when were they conveyed? And if they weren't conveyed at the outset of the agreement of August 1, was the subsequent conveyance retroactive? Or alternatively, should we read the two agreements together and see what the parties intent might be from reading the two agreements together? And I know you say, Mr. Bathke, that the August 1 agreement is being argued for the first time, but I'm not following you there because the August 1 agreement is in the record and did have the attention of the district judge. Your Honor, may I? Yeah. Okay. I just first address the issue with the August 1, 2017 agreement. The August 1, 2017 agreement is not between Showtime and Mayweather. It is not between Showtime and Johand. It is not between Mayweather and Showtime. Showtime is not a signatory to that agreement at the bottom of the agreement. In the record, there is no agreement between Showtime and Mayweather. If Showtime conveyed the rights to Mayweather, and Mayweather then conveyed the rights to Plaintiff prior to the simulcast of the boxing match, then we'd be in a very different place. Instead, Showtime filed a lawsuit prior to the simulcast after the date of the August 2017 agreement that is now in the record, that is in the record, and yes, Your Honor, it was in the record. The issue was the agreement at issue is the Showtime agreement of November 13, 2017. What Johand is trying to use is the Mayweather agreement, which does not have Showtime as a party. They're trying to use that as extrinsic evidence to interpret that agreement because Showtime is not a part of that agreement. This extrinsic evidence would actually contradict the fact that Mayweather is the owner of the copyright and not Showtime. Let's look at your opposing counsel's argument. If in fact, I'm hearing kind of different arguments about the initial one, which I understood had to do with exclusivity provisions being provided so that it wasn't a bare right to sue, but your opposing counsel argues that that really doesn't matter because the November, as I understand, it's 20 or 21, 2017 agreement, retroactively granted rights. What is it in the Copyright Act that bars someone from retroactively granting a right? Yes, Your Honor, and because there is a time limit, I have five seconds left. I don't know. Well, you can take more time to answer if you need it. Thank you. Yes, I would rather stop and let you let me know. Okay, that's fine. Thank you, Your Honors. All right. And I think this goes to the first question that you guys, your honors have posed, and that is dealing with the prohibition of whether 201D prohibits the transfer of rights in this exclusive right to display a copyrighted live event. Now, the answer to this, yes, concerning the simulcast, because- that sort of retroactive agreement. I understand. So a reading of 106, Section 106, which identifies the exclusive rights. Section 106 states that the copyright owner has the exclusive rights to do and to authorize. It would be impossible for Johan to simulcast a live event in the past. It would be impossible for Johan to authorize the simulcast of a live event in the past. To do so, they would have to essentially go back in time before the live sports event event to either do the simulcast or authorize the simulcast. The answer to question one is yes, with regards to the simulcast. No, with regards to the rerun, a rebroadcast. See, the issue with this work is it's, it is a very- We understand that this was not a conveyance of subsequent rebroadcasting. This was a conveyance of the original right that Showtime is saying is conveyed retroactively because on the date of the simulcast, Johan held the right to itself publish that fight, right? Well, Johan had the ability and did, in fact, provide to the public the live casting out, the live performance of that act in August. Isn't that correct? Your Honor- And your argument is that, well, you didn't put it in the record. Is that not a correct analysis? I'm sorry, you're saying- Is it not a correct analysis that Johan, in fact, had those rights on the date of the live fight? And your argument is that, but you didn't put that document into the record, or you didn't argue it because the document you concede is in the record. Your Honor, no. Pardon, Your Honor. I can explain if you wish. So at the time of the fight, the owner of the simulcast was Showtime. That is the copyright work at issue. And that's evidenced in the record by the fact that Showtime brought a lawsuit against other entities under 411C, which allows for a lawsuit to be brought for this type of work prior to the fixation of the work. And my problem with that analysis of copyright law is that copyright law, as I understand it, particularly contains a number of rights that are listed. And the holder of those rights is authorized to alienate all or single ones along the way. So while Showtime might have retained some rights that it could prosecute, it also had the right under the copyright law to alienate other portions of the rights that it held to give them to other people who then had the right to sue on that which they had received from the, is it a list of six? I mean, we might have to ask your opposing counsel, but there's an entire list, as I understand it. Am I incorrect on copyright law? Your Honor, in order for a person or an entity to bring a lawsuit to assert their rights under copyright law, they must be the owner of the copyright. They either must have an assignment or an exclusive license. A non-exclusive license holder does not have standing to bring a lawsuit. They are not the copyright owner. It doesn't answer my question as to whether the Showtime had held to itself some portion of the listed group of rights which it could then enforce and alienated others on the list of, I'm assuming six, and authorized that other entity to hold that right and enforce it. Your Honor, if Johan was the exclusive licensee of a right before the event took place, then they would have be able to bring the lawsuit. The problem is there is no evidence in the record that they had an exclusive license. In fact, the contrary is in evidence, 411C lawsuit brought by Showtime, specifically stating they own all exclusive rights in the event. So Showtime was the owner at the time the event occurred. Under 501B, a reading of 501B, which is plain and unambiguous, would make them the copyright owner for the purposes of proceeding with lawsuit against those that infringed. On one of the listed rights that is alienable under the Copyright Act, correct? Your Honor, because it had Showtime, because based on the view of the record and what the evidence is, Showtime had all of the exclusive rights in the simulcast display, the public performance, prior to the day of. And therefore, they were the entity that had, there were no exclusive licenses in the record to other entities by Showtime to allow them to bring a lawsuit. Counselor, I know you're out of time, but I do have one last question here. You had earlier stated that it was of some importance that Showtime was not a party to the August 1 agreement. However, there's yet a third agreement here, the distribution agreement, prior to, which was an agreement prior to the August 1 agreement in which Showtime contracted with Mayweather to convey certain of these copyright interests to Mayweather. And Mayweather then entered into this agreement of August 1 with the plaintiffs. So, it was saying that it doesn't necessarily matter that Showtime was not a party to the August 1 agreement, because it was, it already had conveyed these rights and interests to Mayweather pursuant to this distribution agreement. Is that, would you agree with that? Your Honor, my understanding, based on my review. And the distribution agreement, by the way, is in the record. I'm sorry, Your Honor. Well, I was just also, as a footnote, the distribution agreement is in the record. Your Honor, if you could, if there's an appendix number, I can, I'm sorry, isn't it the May, isn't one of these key ones, the Mayweather, which you gave us the number for earlier, 00031? Yes, Your Honor, that is the Mayweather. That's in the record, right? Yes, Your Honor, but that agreement, Your Honor, is not between Showtime and Mayweather, or Showtime and Johan. Showtime is not a party to the agreement. And, in fact, after the agreement was executed, Showtime brought a lawsuit. I know, then we're back to my earlier question about whether you have other alienable rights that were, in fact, alienated. Perhaps your opposing counsel can respond in rebuttal. Yes, Your Honor, we're way over time with your argument as well. I think we have your position in hand. We'll proceed back and have rebuttal at this time. Yes, Your Honor, thank you very much. Thank you. Ms. King, you may proceed with your rebuttal. Thank you, esteemed justices. Under the appellee's argument, a copyright author of a live broadcast could never transfer its rights, but that's not what the Copyright Act says. In 17 U.S.C. 101, the term fixed includes a fixation of the work that is being made simultaneous with its transmission. That's what we have here, and the justices are correct. There are actually three agreements here. The very first one is at Joint Appendix S at page ID 347. It is the distribution agreement between Showtime and Mayweather, and this was in June of 2017. Then there is the license, the commercial licensing agreement between Johan and Mayweather. That is at page ID 247. That would be Exhibit G of the Joint Appendix. The third agreement is the retroactive assignment from Showtime after the copyright registration was made. This goes exactly to my argument prior. Johan Promotions owned the exclusive rights on the night of the event. This was not a bare right to sue. In fact, Johan sub-licensed its exclusive rights to its commercial customers on the night of the fight. All involved, Showtime, the promoters, and Johan all understood that for August 26, 2017, Johan held the exclusive rights plus accrued causes of action for this fight on this night. Showtime, there's no provisions that these rights go back to Showtime or go back to the promoters or any of these other things that distinguish these cases cited by the appellees. There is absolutely nothing in the Copyright Act that prohibits a retroactive assignment, especially when all the party's actions and all the context of everything shows that these parties actually performed, that they actually intended. So then how do you respond to Judge Rogers' argument? If you have said we don't need the Mayweather assignment, what is your best argument for why the November 2017 agreement, standing alone, is sufficient under the copyright law to enable Johan to prosecute a claim against this defendant? Yes, Justice. Thank you. So when it is a live broadcast and when you are copywriting a live broadcast, it is the unique position that the copyright registration has to occur later, and the copyright registration relates back and copyrights the live broadcast on the night of the event. And so how does that agreement show the exclusivity of the right? Absolutely. The first there's a whereas. Showtime is the author of the copyright and gives the actual application number file. It says where Showtime, I'm sorry, where Johan is engaged in the business of promoting and distributing closed circuit events. Johan has been granted the sole and exclusive commercial rights in the territory in the event under the copyright laws of the United States. And in fact, the Tennessee District Court actually stated in its opinion that the agreement assigned Johan an exclusive right under the Copyright Act and with it the accompanying enforcement rights. It's just that the Tennessee District Court pivoted, failed to take the context and the  but the record. Should I ask the question? I know you only have 22 seconds left. Maybe Judge Clay will allow this. Is the bottom line that these two cases that the District Court relied upon from the other circuits are distinguishable because there's something particular about live broadcasts that would lead to an absurdity if that doctrine, which didn't involve live broadcasts, were applied here? Yes, it would absolutely put the authors of a live broadcast. Is that a fair characterization of at least one part of your argument? Absolutely, it would put it would be. You wouldn't have to get into all the Mayfair or Mayweather stuff, which after all, the District Court didn't rely on or address. It would absolutely put copyright authors of live events at a disadvantage. What's different? Then we'd have to identify what's different about these live performances. I suppose you could say, correct me if I'm wrong on this, I suppose you could say that because of the nature of a live broadcast, which sort of can't be copied because it won't be live when you copy it, that when you assign the copyright to that or the right to sue for that, you're also including all the other rights because there really aren't any other rights. They've all sort of evaporated or been lived. You could distinguish, see that what the only hurdle I'm having to accepting your argument, to be candid, is accepting this idea that this isn't a bare right to sue. But I guess you could say it's not a bare right to sue because it's giving everything. There's nothing left over that they're not giving because there's nothing left over that is out there. Well, the Copyright Act also allows this. The 1976 amendment in 17 U.S.C. 101 defined the word fixed to include simultaneous broadcast. So when you couple that with 201-D1 and 201-D2 and 101-17 on the definition of the transfer of ownership, the legislature and the statute does not limit it. It says any alienation, any conveyance. The language of the statute is very broad in nature. So as to uphold the very purpose of the copyright law to promote authors and creation, people to create these works and reward for them. I see your time is up. I hate to belabor the point, but it would have been a lot easier if you had argued that and then the other side could have responded and then we could have tried to figure it out. So now we're sort of getting what appears to me to be your strongest argument at the end of the day. But your honor, it is actually... Counselor, you may want to wind up at this point. We're three minutes over your allotted time for rebuttal. So if you could wind up, that would be appreciated. Yes, your honor. These arguments are absolutely not forfeited. This court has discretion and a forfeiture is not one in which the court can dismiss and not fix a district court's error. In this case, to not consider these issues would be to ignore plain error. It would... to let this stand would be contrary to the Second and the Blessing of the Ninth Circuit, contrary to the language of the Copyright Act, and contrary to the intent and actions of the parties in this case. So we certainly hope that this court will take these issues in consideration. Thank you. All right. Thank you very much for your arguments on both sides and the cases submitted. And with that, the clerk may adjourn court. Honorable court is now adjourned.